**Edwin C. COVINGTON, Plaintiff-Appellant,**

v.

**Aubrey COLE, Individually and in his official capacity as Sheriff of Jasper County, Texas, et al., Defendants-Appellees.**

No. 75–1660.

United States Court of Appeals, Fifth Circuit.

March 22, 1976.

Rehearing En Banc Denied June 1, 1976.

Robert H. Mow, Jr., Dallas, Tex. (Court-appointed), for plaintiff-appellant.

Bill A. Martin, Newton, Tex., Richard C. Hile, Jasper, Tex., for defendants-appellees.

Before GOLDBERG and AINS-WORTH, Circuit Judges, and NICHOLS, Associate Judge.*

* Of the U. S. Court of Claims, sitting by designation.

GOLDBERG, Circuit Judge:

This is an appeal from a district court order dismissing a complaint which alleged that certain local officials in Texas had deprived Covington of his civil rights. The district court order noted that "the Court is of the opinion that the petition was inadvertently filed in the first instance," but went on to hold that the complaint "fails to state a cause of action upon which relief can be granted." We find that the complaint does state a cause of action and we reverse.

The complaint at issue here was filed on October 17, 1974, was labeled "in pro pia personam," and was signed "Edwin C. Covington, BY: Mrs. Edwin C. Covington, attorney in fact." The allegations of the complaint are set out *in haec verba* in the margin, and may be summarized as follows:

■ On January 5, 1974, Sheriff Cole and Deputy Sheriff Weaver, acting without a warrant and without probable cause, arrested Edwin Covington in specifically described circumstances, and subjected Covington to a racial slur.[1]

■ On January 5, 1974, Police Chief Wolfe ransacked the Covingtons' home in an illegal, warrantless search.[2]

■ Later in January, 1974, Edwin Covington was transferred into the custody of officials in Nacogdoches, Texas, where he was required to undergo a polygraph test and further questioning, all without being permitted the assistance of counsel.[3]

■ On or before February 12, 1974, several named defendants conspired to transfer Edwin Covington from the Jasper County Jail to the Angelina County Jail, without any official authorization for such transfer.[4]

1. On January 5, 1974, at approximately 9:20 a. m. plaintiff was traveling with a friend on Route 63 enroute to the state of Louisiana when friend and plaintiff became aware of a police car following them and pulled off the road into the parking area of a store. At this time the police car pulled into the driveway on the opposite side of the same store at which time the officers in the police car, defendants Cole and Weaver got out of their car, Sheriff Cole with his pistol drawn and Deputy Weaver with a shot gun and ordered plaintiff and friend out of their car. The order was complied with and plaintiff and friend were instructed to put their hands on their heads and move away from the car which they (plaintiff and friend) had gotten out of at which time plaintiff asked defendant Cole what the purpose of their actions were, while defendant Weaver searched the car that plaintiff was riding in with friend. Defendant Cole stated that plaintiff and friend had robbed a store some fourteen (14) miles back up Route 63. Defendant Cole then used language unbecoming of an officer of the State of Texas, by saying "you niggers move over there and put your hands on top of your car". Plaintiff and friend were then taken to Jasper County Jail and booked at 9:30 a. m.

Plaintiff alleges that the defendants Cole and Weaver's arrest of his person without a warrant was illegal for there was no basis by which probable cause could be determined for the aforestated defendants didn't investigate to see if an offense had been committed before making the illegal seizure of the plaintiff.

2. On January 5, 1974, the defendant, Dewey Wolfe [Chief of Police of Diboll, Texas] went to the plaintiff's place of residence at 321 Elm Street, Diboll, Texas for the purpose of illegally searching plaintiff's home without a search warrant and without plaintiff's consent and placed plaintiff's wife and daughter in great fear by his ransacking of plaintiff's home the refrigerator and medicine cabinet included."

3. Approximately a week to two weeks after plaintiff was originally placed in false imprisonment by defendant Cole, defendant Cole released the plaintiff into the illegal custody of two Woodville, Texas Deputy Sheriffs to be taken to the Nacogdoches City Police Station in Nacogdoches, Texas to be given a polygraph test without the consent of plaintiff and without allowing plaintiff to have counsel present to advise him. Plaintiff was in fear of imminent bodily injury before and after being compelled to undergo a polygraph test which lasted approximately two and one-half hours, after which plaintiff was taken to Woodville to the County Jail where he was compelled to undergo further questioning without the aide of counsel.

4. [On or before February 12, 1974,] the defendants Martin, Hannah, Cole and McBride conspired and concerted for the purpose of moving the plaintiff to the Angelina County Jail in Lufkin, Texas, illegally to further prolong plaintiff's state of false imprisonment and compel plaintiff to answer to a voidable complaint for it doesn't charge an offense and because no court order or arrest warrant had

■ On April 25 and 26, 1974 several named defendants conspired to give, and did give, perjured testimony in a criminal prosecution against Edwin Covington.[5]

At the end of this notarized complaint appeared a notarized "Affidavit in Forma Pauperis," in the following form:

That I, *Mrs. Edwin C. Covington,* Attorney in Fact, for Plaintiff in the foregoing complaint, upon my oath state that he is unable to pay the costs incident to this preceeding [sic], or to give security therefor.

/s/ Edwin C. Covington
Plaintiff

BY: /s/ Mrs. Edwin C. Covington
Attorney in fact

The district court referred the matter to a United States Magistrate who reported, in part, as follows:

The complete petition is a barrage of alleged language used and acts performed in the handling of the said Edwin C. Covington, and other matters, all of which are inadequate and insufficient to state a cause of action upon which relief can be granted.

It is noted that Mrs. Edwin C. Covington, who swore to the affidavit and who signed the complaint as an attorney in fact, is not authorized to practice law in the Eastern District of Texas, and there is some question as to whether she is even a licensed lawyer.

It is further to be noted that this is not a pro se petition by an inmate. It is further to be noted that the affidavit in forma pauperis is insufficient to sustain any action to proceed in forma pauperis even if it had been signed by a pro se petitioner, which apparently it was not, and is therefore inadequate to support a petition of this nature.

It is further to be noted that there is no written order by the judge of this Court authorizing the filing and processing of this cause of action in forma pauperis.

The Magistrate recommended that the cause of action be dismissed and that the plaintiff not be authorized to proceed *in forma pauperis.*

On November 7, 1974, the district court, without requiring responsive pleadings and without giving the plaintiff an opportunity to amend, dismissed the complaint in the following order:

CAME ON FOR CONSIDERATION the civil rights complaint filed by the above-named plaintiff, the Court having heretofore ordered that this matter be referred to the U. S. Magistrate at Beaumont, Texas, for proper consideration pursuant to applicable laws and orders of this Court, and this Court having received the report of the U. S. Magistrate pursuant to such order, and having considered said report along with the record, files and pleadings, and all available evidence, which show conclusively, and the Court is of the opinion that the petition was inadvertently filed in the first instance, further that the same fails to state a cause of action upon

been issued by any court authorizing the plaintiff's transfer between the two counties, Angelina and Jasper. Defendant Cole turned the plaintiff over to two (2) of defendant McBride's deputies who had been instructed by defendant McBride to bring plaintiff from Jasper County Jail to the Angelina County Jail.

5. On April 25, 1974, the defendants Hannah, Goodwin, Cole and Morgan conspired and concerted to deny the plaintiff his rights of equal protection of the law and due process of law by intentionally and knowingly planning to use false and prejudicial testimony against the plaintiff for sole purpose of prejudicing the jurors to deny plaintiff a fair trial by an impartial jury.

On April 26, 1974, the defendants Cole and Morgan after being duly sworn in open court of the 159th Judicial District for Angelina County, Texas did give testimony against the plaintiff which was false, slanderous, very prejudicial and exclusively to prejudice the jurors against the plaintiff. This testimony was given on behalf of the State and was in no way related to the offense the plaintiff was on trial for. Nor was the defendants Cole and Morgan's testimony on a prior conviction. The defendants aforestated gave their testimony willfully, intentionally and knowing that they were obstructing justice.

which relief can be granted, and this cause should be dismissed; it is therefore,

ORDERED, ADJUDGED and DECREED that this cause be, and the same is hereby in all things DISMISSED from the docket of this Court.

Covington then filed a *pro se* motion, which he himself signed, requesting that the district court "grant the plaintiff a certificate of probable cause to the United States Court of Appeals for the Fifth Circuit from the order entered . . . on the 7th day of November, 1974." The district court considered this to be a motion for leave to appeal *in forma pauperis* and denied it, stating that the court hereby adopts the

> Conclusions of the U. S. Magistrate, and in addition thereto, finds that the petition is frivolous and without merit, that the matter was inadvertently filed by the Clerk of this Court without prepayment of cost and without securing the authority of the Court to have filed the same, and finds and concludes that the Court would not have authorized the filing of said petition if it had initially been presented to the Court for determination, and further finds that the petition was filed by an individual who is not an attorney on behalf of the plaintiff and was signed by said individual who has not been authorized to practice law in this Court, and the Court further finds that the petition is little more than a harassment action by the plaintiff to harass numerous public officials in various counties throughout the State where in the petitioner has been incarcerated, and that this Court has the duty to protect the officials from such harassment pursuant to *Parsell v. United States,* 218 F.2d [232] 236, and further finds that the petition fails to state any cause of action upon which relief can be granted, and that the

same should have been dismissed pursuant to the authority of *Jones v. Bales* [D.C.Ga.], 58 F.R.D. 453. . . .

Covington subsequently filed with this Court a *pro se* brief on the merits of the dismissal of the complaint. It was treated initially as a motion for leave to appeal IFP, which motion was denied by a single judge of this Circuit. Covington then paid the docketing fee and obtained permission to proceed on the original record and typewritten brief. Feeling that the issues raised by Covington were not insubstantial, another judge of this Circuit appointed counsel for Covington for the purpose of filing a supplemental brief. From this skimpy, unenlightening record and confused procedural background, we perceive the following issue to be before this panel: did the district court err in its November 7 order dismissing the complaint for "failure to state a cause of action upon which relief can be granted"?

■ As a threshold matter we note, as did the U. S. Magistrate and the district court in its denial of leave to appeal IFP that the complaint was signed not by the plaintiff, but by the plaintiff's wife as "attorney in fact" for the plaintiff. Federal Rule of Civil Procedure 11 requires that "A party who is not represented by an attorney shall sign his pleading and state his address." The role that the plaintiff's failure to sign played in the district court's disposition of this case is unclear.[6] This factor did not, however, deter the district court in its November 7 order from reaching the merits and dismissing the complaint with prejudice. Without deciding whether a signature by a spouse as "attorney in fact" can be sufficient under Rule 11, we can easily conclude that *sua sponte* dismissal with prejudice is not a proper disposition in the face of this arguable defect, at most a technical defect, in the complaint.[7] Even if it might have been

---

**6.** In stressing the absence of any showing that Mrs. Covington was qualified to practice law, the Magistrate and the district court apparently misapprehended what is meant by "attorney in fact." Mrs. Covington was purporting to be

Mr. Covington's authorized agent, and did not represent herself to be a lawyer.

**7.** In situations in which a party is not represented by an attorney, the Rule 11 signature

appropriate for the trial court to dismiss the complaint without prejudice to its refiling with the plaintiff's signature, we think that in the present posture of the case, the interests of justice require that we treat the complaint, as did the district court, as properly filed, and proceed to the merits of the appeal.[8]

In reviewing a dismissal for failure to state a cause of action, we must reverse "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 1957, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80. This standard is clearly hostile to summary dismissal based on the face of a complaint, and becomes more so when a *pro se* complaint from a prisoner is considered, because such complaints are to be read very liberally.[9] *Haines v. Kerner,* 1972, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652; *Martin v. Wainwright,* 5 Cir. 1976, 526 F.2d 938; *Watson v. Ault,* 5 Cir. 1976, 525 F.2d 886; *Gamble v. Estelle,* 5 Cir. 1975, 516 F.2d 937; *Campbell v. Beto,* 5 Cir. 1972, 460 F.2d 765.

We inquire then, whether within the universe of theoretically provable facts there exists a set which can support a cause of action under this complaint, indulgently read. We need not look far. The allegation, listed as [2]

above, of a warrantless search of the Covington's home is amply specific to conjure visions of an actionable violation of Covington's fourth amendment rights. *See Monroe v. Pape,* 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (cause of action is stated under 42 U.S.C. § 1983 by a complaint alleging that police officers invaded plaintiff's home and searched it without a warrant); *cf. Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 1971, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (violation of fourth amendment's command against unreasonable search and seizures gives rise to federal cause of actions for damages).

Having determined that the plaintiff has stated a claim upon which relief can be granted with respect to the alleged search, we must remand the case to the district court. Because minimal further development of this case at the trial level might reveal that some or all of the allegations in the complaint are not properly before the Court under the Civil Rights Acts, we decline to determine the sufficiency of each of the other allegations. We allude to the doctrine whereby an arrest is to be viewed as proper as long as a conviction flowing from that arrest stands. *See Shank v. Spruill,* 5 Cir. 1969, 406 F.2d 756, 757. The doctrine is in the nature of collateral estoppel, and would apply to any alleged deprivation of right which might

---

requirement seems designed mainly to assure the court that the named party is actually in assent to the filing of an action on his behalf. *See Huffman v. Nebraska Bureau of Vital Statistics,* D.Neb.1970, 320 F.Supp. 154, 156. When a court is otherwise assured that the party endorses the pleading, even a complete failure to sign has been termed a mere "technical defect." *See Holley Coal Co. v. Globe Indemnity Co.,* 4 Cir. 1950, 186 F.2d 291, 295; *Burak v. Pennsylvania,* E.D.Pa.1972, 339 F.Supp. 534, 535 n. 2. We note that Edwin Covington himself signed the request for a "certificate of probable cause."

8. On remand, the district court on its own motion or on the motion of defendants may wish to require that Edwin Covington sign the complaint himself, or demonstrate that he had, in a sufficient fashion, authorized his spouse to

sign for him before she did so. We note that a copy of a document purporting to be a power of attorney to sign legal documents granted by Edwin to his spouse is appended to Covington's *pro se* brief before this Court—this document was not part of the record before the district court, and so we do not consider it in our disposition of this appeal.

9. The Magistrate's report stated that this was not a *pro se* complaint, presumably because it was signed by the plaintiff's spouse as "attorney in fact." The complaint was labeled "in propia personam," was signed in the plaintiff's name by his wife as attorney in fact, and is untainted by the hands of a trained lawyer. We can find no warrant for reviewing this complaint for sufficiency other than by the *pro se* standard.

be challenged in a direct appeal from a conviction or through a *habeas corpus* attack on the conviction.[10] Our inability to apply this doctrine in this appeal is simply explained—nothing in the meager record before us informs us of the charge or charges upon which Covington was convicted.[11] Should the district court discover that this doctrine is inapplicable to some or all of the allegations, that court can then review the sufficiency of those allegations under the liberal *Haines v. Kerner* standard set out above.[12]

One other matter deserves brief discussion here. In its November 7 order dismissing the complaint, the district court stated that "the Court is of the opinion that the petition [sic] was inadvertently filed in the first instance."

We assume that this refers to the attempt of the plaintiff to proceed *in forma pauperis, see* 28 U.S.C. § 1915. The grounds for the lower court's opinion on this matter can be inferred from the Magistrate's report and from the order denying leave to appeal IFP. The court 1) noted that Mrs. Covington, who signed the affidavit, was not an attorney at law, 2) characterized the complaint as a frivolous harassment action, and 3) may have concluded that the averment of poverty was insufficient to support a motion to proceed IFP. Serious arguments can be made that an affidavit supporting a motion to proceed IFP must be signed by the purported pauper himself,[13] and that the affidavit must support the claim of poverty with more than a generalized averment of impecunity,[14] and thus that the district court,

---

10. *See Mastracchio v. Ricci*, 1 Cir. 1974, 498 F.2d 1257, 1259–61, *cert. denied*, 1975, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838, and cases therein cited. This doctrine might even apply to Covington's allegation of an illegal search, if evidence was seized during the search which was used at Covington's trial. In *Jones v. Bales*, N.D.Ga.1972, 58 F.R.D. 453, 460, *aff'd*, 5 Cir. 1973, 480 F.2d 805, the district court properly applied the doctrine of *Shank v. Spruill, supra*, to two searches, holding that the one which had been fully litigated in a state criminal trial could not be made the subject of a civil rights action, whereas the search which had "no bearing on the validity of plaintiff's convictions" was an appropriate basis for a civil rights claim.

11. We assume that Covington was convicted of something, because he is now in jail. Having no means from this record for determining the manner in which the alleged illegalities relate to his conviction or convictions, we can only note that the district court, on remand, will want to remain cognizant of the potential applicability of *Shank v. Spruill, supra*. We reject the novel suggestion that our review of the propriety of the district court's action should be guided on factual matters by an unsworn letter and an appellate brief, neither of which were before the district court and neither of which, in any event, indicates that *Shank v. Spruill* might preclude the claim alleging an illegal search.

Since the doctrine that the arrest is presumed valid as long as the conviction stands is in the nature of collateral estoppel, *see Mastracchio v. Ricci, supra* note 10; *Willard v. United States*, 5 Cir. 1970, 422 F.2d 810, it

would seem to be an affirmative defense—that is, Covington's complaint does not fail to state a cause of action because he failed to plead that these allegations could not be made in a direct appeal from a conviction or through habeas, or because he failed to say he was innocent of crimes for which he may have been convicted. This is not to say that it would be inappropriate for the district court on its own motion to seek more specific information on these matters from Covington before responsive pleadings are required to be filed.

12. We note that the district attorneys who are defendants here may be officially immune to suit for alleged improper acts, if those acts were alleged to be committed within the scope of their official trial-related duties. *See Imbler v. Pachtman*, 1976, —— U.S. ——, 96 S.Ct. 984, 47 L.Ed.2d 128 [44 U.S.L.W. 4250]; *Madison v. Gerstein*, 5 Cir. 1971, 440 F.2d 338. We feel that this, too, is a determination which should first be made at the trial level.

13. *See Pothier v. Rodman*, 1922, 261 U.S. 307, 309, 43 S.Ct. 374, 67 L.Ed. 670, 671, in which the Supreme Court, discussing an affidavit in support of a motion for leave to appeal *in forma pauperis*, stated:

Under the statute the affidavit as to the poverty of the applicant is to be made by himself, and not by another, even his counsel. A supporting affidavit may properly be made by the counsel, but the importance that he who is seeking the privilege accorded by the statute should be required to expose himself to the pains of perjury in a case of bad faith is plain.

14. *See Dreyer v. Jalet*, S.D.Tex.1972, 349 F.Supp. 452, 459–60, *aff'd*, 5 Cir. 1973, 479

under § 1915(a), might properly have refused to authorize the commencement of this suit without prepayment of fees and costs. The lower court treated the complaint as if it had been properly filed, however, so at most the orders of the district court can be construed together to indicate a dismissal of the IFP action under 28 U.S.C. § 1915(d).

■ Whatever the correct construction of the district court's disposition of and opinions about the IFP action, it is clear that the court in its November 7 order went beyond IFP considerations and dismissed the complaint with prejudice under a Fed.R.Civ.P. 12(b)(6) standard.[15] We have held that this dismissal, which would have acted as *res judicata* on Covington's allegations, was in error. In these circumstances, we feel that Covington should be permitted, on remand, to file a new affidavit in support of a request to proceed in IFP. The district court can consider this request in light of our holding that the complaint does state a cause of action, and in light of the standards articulated in *Watson v. Ault, supra, Campbell v. Beto, supra,* and *Jones v. Bales,* N.D.Ga.1972, 58 F.R.D. 453, *aff'd,* 5 Cir. 1973, 480 F.2d 805. We note particularly that *Jones* (cited by the court below), after stating that an action

proceeding IFP should be dismissed when the district court becomes convinced that the action is "frivolous," admonished as follows:

This is not to say that such suits should not be allowed filed or be dismissed abruptly or that a court should readily assume frivolity because it is prisoner filed. To the contrary, it is incumbent upon the court to develop the case and to sift the claims and known facts thoroughly until completely satisfied either of its merit or lack of same.

58 F.R.D. at 464.[16]

In remanding this case, we neither intimate any view on the ultimate merits of Covington's claims, nor suggest the exact procedures which the district court should employ in its efforts "to develop the case and to sift the claims and known facts thoroughly." Several recent opinions of this and other Courts discuss various approaches which may be of use to the district court in exercising its sound discretion with regard to this complaint.[17] A committee of the Federal Judicial Center chaired by Judge Ruggero J. Aldisert of the Third Circuit has also studied these problems and has issued a tentative report entitled "Recommended Procedures for Handling Prison-

F.2d 1044. A model form designed to elicit specific averments of poverty is appended to this Court's opinion in *Watson v. Ault,* 5 Cir. 1976, 525 F.2d 886.

**15.** The distinction between the standards applicable under Fed.R.Civ.P. 12(b)(6) and § 1915(d), and the reasons for that distinction, are discussed in *Jones v. Bales,* N.D.Ga.1972, 58 F.R.D. 453, *aff'd,* 5 Cir. 1973, 480 F.2d 805.

**16.** *Cf. Anders v. California,* 1967, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493, 498, in which the Court stated that a complaint is not frivolous if "any of the legal points [are] arguable on their merits."

**17.** *See, e. g., Reed v. Jones,* 5 Cir. 1973, 483 F.2d 77, in which the district court had referred a § 1983 prisoner complaint to a magistrate, who recommended dismissal on the basis of the complaint alone. Without asking the plaintiff for more specific information or requiring any response from the defendants, the district court dismissed the complaint. After holding that the complaint did state a claim

under the *Haines v. Kerner* standard, and thus reversing the district court, this court noted:

This is not to say that a trial will be necessary. The Federal Rules of Civil Procedure contain adequate tools for use in the processing of suits of this type. The summary judgment procedure is available and thereunder the matter might be resolved on affidavits. Pretrial hearing is, of course, available. As another example, the defendants might be required to institute discovery proceedings. Moreover, the court, *sua sponte,* might require the defendants to formulate and serve a motion for a more definite statement on petitioner under Rule 12(e), F.R. Civ.P., in an effort to ascertain the facts for use in proceedings short of trial. On the other hand, there will be cases where the petitioner will be entitled to a trial, as in any other civil case where a cause of action is stated and disputed issues of fact remain. *Id.* at 79 (footnotes omitted).

*See also, e. g., Watson v. Ault,* 5 Cir. 1976, 525 F.2d 886 [1976]; *Jones v. Ault,* S.D.Ga. 1974, 67 F.R.D. 124.

er Civil Rights Cases in the Federal Courts."

 In conclusion we note that this Court, too, is desirous that public officials not be harassed by frivolous civil rights actions. It is apparent from reviewing our recent cases, however, that the shield of summary dismissal by the district courts of prisoner complaints has, in many instances, proved to be worse than ineffective as a protection for these officials. Since this Court is properly required to reverse and remand when the complaint, liberally construed, states a cause of action, precipitous dismissal may only add the expense and inconvenience of appellate litigation to whatever burden appropriate development of the case at the trial level might entail. The exhumation and resurrection of viable prisoner complaints which have been summarily given final rites and buried by district courts has become a major occupation of this Court.[18] We recognize that prisoner complaints often seem annoying and insubstantial, and that the volume of such complaints faced by most district courts would try the patience of Job. Job-like patience, however, should be the judicial benchmark in this area. Technical rigidity in reviewing pleadings must be eschewed, and we must remain extremely tolerant of the juristically unlearned as they seek to articulate their belief that they have suffered deprivations of constitutional rights. Courts at both levels, as well as defendants, will be less harried if prisoner complaints are given an adequate initial examination, and the labels "fails to state a cause of action" and "frivolous" are applied only when a record is developed which justifies them.[19]

Reversed and remanded.

AINSWORTH, Circuit Judge, dissenting:

Edwin C. Covington, an inmate of the Texas Department of Corrections at Huntsville, has filed this pro se 42 U.S.C. § 1983 suit for damages in the amount of $300,000 against the Sheriffs and District Attorneys of Jasper and Angelina Counties, Texas, and other law enforcement officials in these counties. His complaint alleges that on January 5, 1974, he was arrested on Route 63, in the company of a friend, by the Jasper County Sheriff and his Deputy who apprehended him and friend for the armed robbery of a store some distance back on the highway. Covington's complaint also

---

18. For an exhausting, but non-exhaustive, list of the most recent such cases, consider the following: *Martin v. Wainwright*, 5 Cir. 1976, 526 F.2d 938; *Watson v. Ault*, 5 Cir. 1976, 525 F.2d 886; *Martin v. Wainwright*, 5 Cir. 1976, 525 F.2d 983; *Demps v. Wainwright*, 5 Cir. 1975, 522 F.2d 192; *Echols v. Sullivan*, 5 Cir. 1975, 521 F.2d 206; *Hardwick v. Ault*, 5 Cir. 1975, 517 F.2d 295; *Gamble v. Estelle*, 5 Cir. 1975, 516 F.2d 937, cert. granted, 1976, —— U.S. ——, 96 S.Ct. 1101, 47 L.Ed.2d 311; *Fontaine v. Walls*, 5 Cir. 1975, 515 F.2d 884; *Cruz v. Hauck*, 5 Cir. 1975, 515 F.2d 322; *Hines v. Askew*, 5 Cir. 1975, 514 F.2d 673; *McCray v. Sullivan*, 5 Cir. 1975, 509 F.2d 1332; *Perry v. Jones*, 5 Cir. 1975, 506 F.2d 778; *Patterson v. MacDougall*, 5 Cir. 1975, 506 F.2d 1; *Lynott v. Stewart*, 5 Cir. 1974, 505 F.2d 1023; *Goff v. Jones*, 5 Cir. 1974, 500 F.2d 395.

19. As is indicated in text, we have concluded that this cause must be remanded at least on the basis of the illegal search claim, and we decline to resolve the tough legal questions of the sufficiency of the other allegations, because minimal further development of the case might reveal other grounds for dismissal of some or all of the allegations. Respect for orderly judicial processes dictates that this further development take place at the trial level. Rarely indeed should an appellate court order a record supplemented, especially for the determination of facts which should have been determined by the trial court.

We note again that a trial may never be necessary in this case. Much of this case might be disposed of by the trial court on the basis of further information elicited from the plaintiff, before responsive pleadings are required to be filed. Discovery tools and summary judgments are also available and the permission to proceed *in forma pauperis* can be terminated should frivolity definitely rear its silly head. The peremptory dismissal now before us was not proper, however, and we cannot affirm it on the basis of a visceral feeling that the plaintiff ultimately will not prevail. Our intuitions may render us skeptical of the plaintiff's case, but our application of law must be based on cognition.

alleges that at the time of the arrest he was subjected to racial slurs by the police officials, that his arrest without a warrant was illegal, and that he was falsely imprisoned. Further, the complaint alleges that on the date of his arrest, January 5, 1974, one of the defendants, Chief of Police Dewey Wolfe, of Diboll, Texas, illegally searched his home without a warrant and placed plaintiff's wife and daughter in great fear. The complaint further states that he was compelled to give a polygraph test, that he was illegally moved to the Angelina County Jail, that defendant Sheriffs and District Attorneys conspired to use false testimony against him for the purpose of prejudicing the jurors and to deny plaintiff a fair trial, that defendant Sheriffs gave false and prejudicial testimony against him in open court. The allegations of wrongdoing against the defendant officials are mainly cast in vague and conclusory terms.

Nowhere in any of the pleadings, papers, or briefs of appellant Covington does he unequivocally allege or contend that he is *innocent* of the robbery charges for which he was convicted.

According to uncontradicted information supplied to this Court by the District Attorney of Jasper County[1] and by Mrs. Edwin C. Covington[2] who styles

---

1. The brief of Jasper County District Attorney Bill A. Martin, counsel for appellees, states:

 "The Appellant Covington , and another State defendant were arrested while attempting to escape from an aggravated robbery in Jasper County, Texas. They were in an automobile and the Appellee, Sheriff Cole, along with Deputy Sheriff Causey Weaver were in hot pursuit. The officers received a call telling of the robbery. The officers captured the man and found a gun at the feet of Covington. By running the number of the gun through N.C.I.C. and T.C.I.C. it was found that the gun was listed as stolen in Angelina County. Appellant and his companion were given their rights, taken to a Justice of the Peace in Jasper County, again warned of their rights by the Judge after the charges were made. Charges were brought against Covington and his companion in Angelina County for robbery and they were convicted. Charges were brought in Jasper County for aggravated robbery against both participants and they were convicted. The facts in the latter case showed that the Appellant fired the recovered weapon into the fact [face] of the victim in the Jasper County robbery, missing by less than an inch and then only because the victim dodged to one side. Further, it is shown that the Appellant went with the officers and assisted in the recover[y] of some of the loot that was tossed from the window of the car when the officers were chasing them."

2. Mrs. Covington in a letter dated November 26, 1975 to Judge Goldberg, copies of which were furnished to this panel, states in part:

 "In April Edwin was trialed [sic] by a jury of twelve people for aggravated robbery in Lufkin, Texas. During this trial Sheriff Aubrey Cole, one of his deputies Mr. Causey Weaver and Mr. Clarence T. Morgan the owner of the grocery store, all of Jasper crossed the county line and came to Lufkin to testify in behalf of the state against Edwin. The testimonies that they gave were slanderous, prejudicial and in no way related to the incident that he was being trialed [sic] for. They were really testifying to the Jasper offense in the Lufkin trial. Edwin was judged guilty and sentenced to thirty (30) years at the Department of Corrections in Huntsville, Texas.

 "One year later when we thought that both trials were over since all testimonies for both offenses were given at the Lufkin trial, Edwin was bench warranted from Huntsville, Texas to Jasper, Texas to face trial for the Jasper offense. It was the month of January. We just didn't understand it. A week before the trial we found out that an attorney from Jasper would represent him.

 "I spoke to the attorney once. He said that he knew nothing about the case except for what he had heard from outside people and read in the newspaper. My husband didn't get to talk to him or know what he even looked like until the day of the trial. The same people that testified in the Lufkin trial testified again to a jury of twelve in Jasper. Their testimonies were the same also mentioning to the jury about the Lufkin deal. There was no way that Edwin could receive a fair trial. He was judged guilty and sentenced to thirty (30) more years in the Texas Department of Corrections at Huntsville, Texas."

Though the above information was not in the record below, it is undenied and we should either take cognizance of uncontradicted facts or have the record supplemented to avoid the necessity of remanding this action.

herself as "attorney in fact" for her husband, plaintiff Covington is serving cumulative sentences of sixty years' imprisonment in the Texas State Prison at Huntsville on convictions of aggravated robbery in Jasper County and robbery in Angelina County.

The present suit was filed by Mrs. Covington as "attorney in fact" for plaintiff without prepayment of costs with an accompanying affidavit of Mrs. Covington that her husband is unable to pay the costs, but without a pauper affidavit by Covington himself and without a prior order of the District Judge authorizing the commencement of the suit as required by 28 U.S.C. § 1915.[3]

Accordingly, the District Judge *sua sponte* correctly dismissed the suit on the written report and recommendation of the United States Magistrate for failure to comply with the provisions of section 1915(a) because the pauper affidavit was not personally signed by Covington as required by the section and because no order of the District Court had been previously obtained authorizing commencement of the action. Additionally, the Magistrate and the Court concluded that the complaint failed to state a cause of action on which relief could be granted.

The District Court denied the request for certificate of probable cause filed by Covington and held that the action of plaintiff was designed to harass numerous public officials in various counties of the State of Texas wherein petitioner has been incarcerated and that the Court has the duty to protect the officials from such harassment.

The majority now decrees that the District Court's judgment summarily dismissing the pro se complaint is erroneous and must be reversed; further, that the case must be remanded for further development at the trial level; and that on remand Covington should be permitted to file a new affidavit in support of his request to proceed *in forma pauperis.* The majority cites one allegation from Covington's complaint, *i. e.,* the alleged warrantless search of Covington's home, as "amply specific to conjure visions of an actionable violation of Covington's fourth amendment rights." This allegation is found in paragraph 12.e of the complaint where it is stated that Diboll Chief of Police Wolfe illegally searched plaintiff's home on the day of his arrest. How Chief Wolfe's alleged search relates to the possible civil liability in damages of numerous other defendants, Sheriffs, District Attorneys, etc., is not stated by the majority, nor is any reason apparent. But these defendants remain in the case nevertheless, under the majority opinion. The majority ignores this critical factual circumstance and then concludes that "Having determined that the plaintiff has stated a claim upon which relief can be granted with respect to the alleged search, we must remand the case to the district court." The majority's conclusion is therefore somewhat confused since the search is alleged to have been made only by the defendant Wolfe, and no allegation thereof pertains to the other defendants.

It is important to remember that Covington is now lawfully incarcerated under two Texas state convictions for robbery after jury verdicts of guilty. The

---

**3.** 28 U.S.C. § 1915 reads in pertinent part as follows:

 (a) Any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees and costs or security therefor, by a person who makes affidavit that he is unable to pay such costs or give security therefor. Such affidavit shall state the nature of the action, defense or appeal and affiant's belief that he is entitled to redress.

An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

 . . . . . ,

 (d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

record does not reveal that he has filed any action to vacate or set aside these convictions by writ of habeas corpus or otherwise. Accordingly, sanction of his section 1983 damage suit against the law enforcement officials here is opposed in principle to our previous holding in *Shank v. Spruill*, 5 Cir., 1969, 406 F.2d 756, where we declined to permit a section 1983 suit by a prisoner against the State of Georgia and two county policemen, holding that the claim "would fail because so long as the Georgia conviction stands the arrest must be viewed as proper." *Id.* at 757. *See also Alexander v. Emerson*, 5 Cir., 1973, 489 F.2d 285; *Jones v. Bales*, N.D.Ga.1972, 58 F.R.D. 453, 460–466, *aff'd*, 5 Cir., 1973, 480 F.2d 805, to the same effect. Though the majority acknowledges the applicability of this circuit's rule of law in such suits, expressed above, it declines to apply it here because, it says, "nothing in the meager record before us informs us of the charge or charges upon which Covington was convicted." Footnoted to this statement of the majority is the concession, however, that "Covington was convicted of something, because he is now in jail."

A reading of the complaint makes it abundantly certain that Covington seeks civil damages growing out of his convictions in Jasper and Angelina Counties, Texas, and that the principal defendants are the Sheriffs and District Attorneys of these counties who are charged with conspiring to bring about that result. The uncontradicted statements of the District Attorney of Jasper County and of Mrs. Covington in her letters and documents filed with the Court show this beyond doubt. Appointed counsel for Covington[4] likewise affirmatively states in his brief (pp. 12–13) that this is true. He writes:

" . . . it is reasonably clear that Covington's complaint embodies a charge of conspiracy by the Appellees to obstruct justice and to deny him the equal protection of the laws by convicting him with perjured testimony, with an implicit underlying racial bias as a motivation."

The majority in its footnote 19 rejects the suggestion first noted in footnote 1, *supra*, of this dissent—that we should take cognizance of uncontradicted facts or supplement the record to avoid remanding this action. The majority states that "Rarely indeed should an appellate court order a record supplemented, especially for the determination of facts which should have been determined by the trial court." The majority's statement is erroneous for there are numerous instances where this circuit and other circuits have done so. See *United States v. Theriault*, 5 Cir., 1976, 526 F.2d 698, where we retained jurisdiction and directed a limited remand to the district court to supplement the record with a statement of the reasons why the court permitted the appellant to be tried before a jury in shackles. Numerous additional examples are referred to in the *Theriault* opinion. In this case supplementing the record would avoid the wasteful procedure of remand and conserve essential judicial time of both the District Court and this Court.

Suits of this kind for monetary damages against law enforcement officials should not be authorized when the convictions upon which the asserted allegations are founded stand unassailed. The District Judge correctly refused to go along. To sanction such a collateral attack against the state convictions by a suit against the law enforcement officials who convicted plaintiff can only serve to denigrate our criminal justice system and promote malicious and frivolous actions against those charged with the duty of apprehending and punishing malefactors against society. Our holdings in *Shank v. Spruill, supra; Alexander v. Emerson, supra,* and *Jones v. Bales, supra,* recognized the impropriety of such actions for damages. But the

---

**4.** Counsel was appointed on appeal by a member of this Court to represent Covington in this section 1983 damage suit. There is no statutory provision authorizing compensation to counsel for his services in this civil damage suit, as there is in habeas corpus proceedings.

majority of this panel declines, at this point, to follow the rulings of this Court and the principles there stated by indulging in judicial niceties of due process and requiring the remand of the case for further proceedings.

The circumstances presented make it apparent that the instant damage suit is frivolous and intended to harass the duly constituted law enforcement officials. It should not be tolerated by this Court. As we said in *Alexander v. Emerson*, where we quoted with approval the holding of the United States District Court for the Western District of Virginia in *Smith v. Logan*:

" ' * * * [I]t would be improvident for a federal court to entertain a suit for damages inquiring into possible constitutional violations committed during the trial, while the petitioner is imprisoned on that conviction. * * State prisoners may have the constitutional violations of their trial remedied by habeas corpus proceedings. In those proceedings the courts can afford the best relief—namely release from custody. In order to adjudicate petitioner's claim for damages this court would be required to hold the same hearings and make the same determinations as necessary on habeas corpus. To allow this suit is to say that every state prisoner may attack the alleged constitutional violations of his trial by two different methods— first, by habeas corpus for release from custody and secondly, by § 1983 for damages. I can find no justification for vastly expanding the burdens on the federal courts by permitting this duplicity of actions. The method for adjudicating these claims is habeas corpus and it is in those proceedings that prisoners may obtain the most adequate remedy.' "

*Id.* at 286.

Likewise pertinent to our dissenting views is this Court's holding in *Parsell v. United States*, 5 Cir., 1954, 218 F.2d 232, 235, where we quoted with approval from *Higgins v. Steele*, 8 Cir., 1952, 195 F.2d 366, 369, as follows:

" . . . there is no reason why a respondent in a patently frivolous proceeding should be called upon to make a return or answer, or why an appeal in forma pauperis should be allowed a petitioner from an order dismissing such a proceeding or denying the relief prayed for."

Federal courts of the nation have been inundated in the last decade with numerous prisoner petitions of all kinds, a great majority of which are either minor or frivolous, some even malicious. As a consequence, we have been considerably impaired in our efforts to give proper attention to those cases which involve serious contested issues of fact and law. The Chief Justice of the United States pointed out in his year-end report on January 3, 1976 (American Bar Journal, February 1976, Vol. 62, at 190), that in the last fiscal year, of a total of 117,000 civil cases filed in the federal courts, 19,000 were petitions from federal prisoners and 14,260 were petitions from state prisoners. This is a total of 33,260 prisoner petitions, or 28.4 per cent of the total civil docket. As we know from our own experience, most of such suits are without merit and do not warrant relief. We must continue to give the most careful consideration to those cases which merit our attention. But surely this is not such a case.

I would, therefore, affirm the judgment of the District Court.