Francis J. MORAN
v.
Larry B. MITCHELL et al.
Civ. A. No. 449–72.

United States District Court,
E. D. Virginia,
Richmond Division.

Feb. 8, 1973.

———◆———

Howard B. Silberberg, Arlington, Va., for plaintiff.

Rosewell Page, III, and Murray J. Janus, Richmond, Va., for defendants.

## MEMORANDUM

MERHIGE, District Judge.

This is an action brought by Francis J. Moran pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 and Va.Code Ann. § 19.1–88 (1960), against the defendants, Virginia State Troopers, charging them with having unconstitutionally arrested his person and searched his motor vehicle. Jurisdiction is attained by virtue of 28 U.S.C. §§ 1332 and 1343.

On November 20, 1972, this Court issued an order denying defendants' motion to dismiss. Subsequently, the defendants filed a plea of collateral estoppel, again moving to dismiss the action. This pleading was not, however, filed within ten days of the Court's order denying the motion to dismiss, as required by Rule 12(a), Fed.R.Civ.P. Upon motion by Moran, a default was entered against the defendants. The defendants have now moved the Court, pursuant to Rule 55(c), to set aside the entry of default.

■ Rule 55(c) allows an entry of default to be set aside "[f]or good cause shown." The decision whether or not to do so rests in the sound discretion of the Court. See Elias v. Pitucci, 13 F.R.D. 13, 14 (E.D.Pa.1952). Since the entry of a default, as opposed to an actual default judgment, is both interlocutory and technical in nature, a court should ordinarily set one aside unless the movant fails to present a reasonable excuse for his neglect or fails to show he has a meritorious defense to the merits of the action. See generally, 6 Moore's Federal Practice ¶ 55.10 [2] (1972).

In this case, counsel for the defendants explains that upon receipt of the Court's order of November 20 he was under the mistaken belief that he had fifteen days, rather than ten, in which to file responsive pleadings. After learning of his mistake and communicating with counsel for plaintiff, he was under a further misapprehension that counsel for plaintiff would agree to a late filing.

■ Such mistakes and misunderstandings ought not in and of themselves to be sufficient to deprive a litigant of his day in court. Particularly ought they not be so in a case such as this where, as subsequently discussed, the defendants have raised what may be a valid defense to the merits of the action. The preferred disposition of any case is, excepting compromise by the parties, upon its merits. The entry of default will be set aside, and the defendants' motion to file an answer out of time will be granted.

The Court now turns to the defendants' plea of collateral estoppel, which it will treat as a motion for summary judgment. The plaintiff has filed a memorandum in opposition to this plea, and the matter, while appearing ready for disposition, must for reasons which are hereafter asserted be held in abeyance.

The defendants assert in support of their motion that an issue identical to that on which plaintiff prosecutes this suit was adjudicated contrary to plaintiff in the criminal action growing out of his arrest by the defendants. It is alleged that the arrest of Moran and the

search of his vehicle were challenged by him on a motion to suppress evidence and that the Circuit Court of Caroline County ruled that the arrest and search were legal and allowed the evidence taken to be admitted. It is further alleged that this ruling was assigned as error by Moran in a petition for a writ of error to the Virginia Supreme Court, which writ was denied. None of these alleged facts are denied by the plaintiff.

█ There can be little doubt that the litigation of an issue in a criminal proceeding may, in appropriate circumstances, act to collaterally estop the assertion of a claim based on that issue in a subsequent civil proceeding. See 1 B Moore's Federal Practice, ¶ 0.418 [1] (1965). Aside from the traditional problems that such a defense raises, such as identity of issues and mutuality of parties, this case also presents a troublesome issue of federal-state judicial relations. Moran is suing under the Civil Rights Act of 1866, which gives federal courts jurisdiction over civil suits alleging deprivation of constitutional rights under color of state law. In his state criminal prosecution, Moran was required, for all practical purposes, to raise these alleged deprivations in order to make his defense. By so doing, he ran the risk of an adverse determination, which in fact was rendered in this case. If the state court's decision on the motion to suppress is held to collaterally estop the assertion of the constitutional claim in federal court, then a state criminal defendant runs the risk that raising a defense such as the exclusionary evidence rule or the involuntariness of a confession will pre-

clude his assertion of the constitutional right in federal court. Faced with the possibility of an adverse state determination, the defendant must make an election: he can either raise the defense, and so risk losing his right to pursue his civil claim in federal court, or he can preserve his federal claim by not raising the defense, and thus risk a criminal conviction. If traditional concepts of collateral estoppel apply, then, a state defendant is faced with a Hobson's choice.

The various courts that have considered this question hold, virtually unanimously, that a state criminal adjudication holding that there has been no violation of constitutional rights act to collaterally estop a § 1983 action based on the same allegations, e. g., Metros v. United States District Court, 441 F.2d 313 (10th Cir. 1971); Kauffman v. Moss, 420 F.2d 1270 (3d Cir. 1970); Collum v. Butler, 421 F.2d 1257 (7th Cir. 1970); Shank v. Spruill, 406 F.2d 756 (5th Cir. 1969); Mulligan v. Schlachter, 389 F.2d 231 (6th Cir. 1968).

█ Notwithstanding these opinions, this Court has some doubt as to the propriety of collateral estoppel in this context, at least in those instances where the criminal defendant is unable to secure federal consideration of his constitutional claims through federal habeas corpus. This doubt stems from the clear congressional purpose behind the Civil Rights Acts of providing a federal remedy to litigants who possess a state remedy in theory, but not in practice. See Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).[1] In the instant case, however, and in the majority

---

1. At least one other court has been troubled by these same concerns:

. . . if a successful state prosecution, based upon the use of information obtained by violating the defendant's constitutional rights, could bar a civil rights action against the police for violating his rights, either by analogy to the law of malicious prosecution or on theories of *res judicata* or estoppel by judgment, the Civil Rights Act would, in many cases, be a dead letter. The rule used to be that evidence obtained in violation of constitutional rights was ad-

missible; that the proper remedies were prosecution of the offending officials or an action for damages by the injured citizen. The Civil Rights Act long antedates the exclusionary rule; the creation of that rule by the Supreme Court, first for the federal courts and later for the state courts, was not designed to, and did not, limit the remedies created by the Congress when it enacted the Civil Rights Act.

Ney v. State of California, 439 F.2d 1285, 1288 (9th Cir. 1971).

of criminal convictions, federal habeas corpus is available to the defendant to assert his federal claims free of *res judicata* or collateral estoppel defenses. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Such post-conviction relief provides a federal forum for the assertion of the federal claims and would clearly satisfy the congressional concerns behind the Civil Rights Act. Accordingly, the Court concludes that a standing state conviction may, in appropriate cases, act to collaterally estop a § 1983 action for damages where the defendant has, or has had, an opportunity to overturn his conviction by means of federal habeas corpus. See Gatling v. Midgett, mem. decis. No. 14,863 (4th Cir., June 9, 1971).

Having decided that a plea of collateral estoppel may be made here, it remains to be determined whether in fact the more traditional requisites of collateral estoppel are met.

■ The defendants' plea states that precisely the issues which are the basis of Moran's claim now were the grounds for his motion to suppress. If this is so, there would appear to be an identity of issues, since the claims that Moran now makes would have been " 'distinctly put in issue and directly determined' in the criminal prosecution," Emich Motors Corp. v. General Motors Corp., 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1969). Moreover, there is, if anything, a heavier burden of proof on the plaintiff in a § 1983 action to show that the arrest and seizure were unlawful than in a suppression hearing. Further, the state claim that Moran makes in this action would have been effectively adjudicated also, since Va.Code Ann. § 19.1–88 affords in substance the same protection as that afforded by the Fourth Amendment. Carter v. Commonwealth, 209 Va. 317, 163 S.E.2d 589 (1968). Plaintiff's claim that the trial court's attitude toward the motion to suppress was "patently intolerant (*sic*), intemperate and biased" (Response to Motion to Dismiss, filed December 28, 1972, p. 3) is irrelevant. It may

be raised in a habeas corpus proceeding, but not in this action.

■ A more serious objection raised by the plaintiff is that collateral estoppel cannot apply in this case because there is no mutuality of parties. Specifically, it is asserted that the defendants in this action were only witnesses in the criminal proceedings, not parties. This argument, though superficially appealing, does not stand under close scrutiny. While a criminal action is brought in the name of the State, all of the law enforcement officers who work toward the prosecution are, in essence, parties to the action. The litigation is, in a very real sense, between them and the defendant. Particularly is this so in a suppression hearing, where it is the conduct of the police officers which is directly attacked by the defendant, thus establishing the sort of advocacy that is normally associated with the mutuality doctrine. The Court is guided by the view expressed by the Court of Appeals for the Fourth Circuit in a memorandum decision, Gatling v. Midgett, *supra*:

> [T]he parties here are in substance the same as those in the state criminal proceeding, for the state officers named here are those engaged in the prosecution, in the name of the state, of the state criminal proceeding. Compare Ex Parte Young, 209 U.S. 123 [, 28 S.Ct. 441, 52 L.Ed. 714] (1908). But even if thought to be different, the trend is away from requiring identity of parties as a prerequisite to collateral estoppel. See, *e. g.*, Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, [402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788] 39 U.S.L. W. 4506 (1971).

Accordingly, the Court concludes that the plea of collateral estoppel may be well taken, if the facts are as suggested by the defendants.

■■ The record here reflects that there is presently pending before the United States District Court for the Eastern District of Virginia, Alexandria Division, a petition for a writ of habeas

corpus, filed by plaintiff herein, challenging the Caroline County conviction. Among the issues raised by this petition are the grounds which plaintiff asserts here. If this petition is ultimately successful such that Moran's conviction is set aside on the grounds asserted here, then plaintiff would not be collaterally estopped from asserting his claim. Accordingly, the Court will stay this proceeding pending the outcome of the Alexandria action. The Court notes, moreover, that it could not enter summary judgment for the defendants at this time in any event. The defendants' plea of collateral estoppel by itself is not sufficient to allow the Court to act. See Kauffman v. Moss, 420 F.2d 1270 (3d Cir. 1970). The Court cannot accept conclusional statements by the defendants' attorney as to what happened in the state court proceeding. While the issue can doubtless be decided one way or the other on a motion for summary judgment, the Court could not so decide on the record presently before it.

An order in accordance with this memorandum shall issue.