James **BURCHETT**, Plaintiff,

v.

**Dr. Willis H. BOWER, Individually, and as Administrator, Arizona State Hospital, and Dr. Michael F. Cleary, Individually, and as Director, Maximum Security Ward, Arizona State Hospital, Defendants.**

**No. Civ. 72-607.**

United States District Court,
D. Arizona.

Feb. 28, 1973.

Paul G. Ulrich and David L. Cocanower, Lewis and Roca, Phoenix, Ariz., for plaintiff.

Gary K. Nelson, Atty. Gen., by Patrick M. Murphy, Asst. Atty. Gen., for defendants.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS, GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND GRANTING PERMANENT INJUNCTIVE RELIEF.

MUECKE, District Judge.

Plaintiff, James Burchett ("Burchett"), has been confined in the Arizona State Prison ("Prison") since his convictions in Maricopa County Cause Nos. 37252 and 39003 in 1961. He has been a patient in the Maximum Security Ward at the Arizona State Hospital ("Hospital") since he was ordered by the Pinal County Superior Court to be committed there in October, 1972. Defendants are the Hospital's Administrator and the Director of its Maximum Security Ward.

Burchett's complaint is brought under 42 U.S.C. § 1983. It seeks, among other things, a declaratory judgment that Burchett has a constitutionally protected

right to mental treatment at the Hospital, preliminary and permanent injunctions restraining defendants and others from future unconstitutional enforcement against him of the prisoner commitment statute, A.R.S. § 31–224,[1] and damages as the result of a prior transfer from the Hospital to the Prison in December, 1971, without a pretermination hearing. The Court has jurisdiction of the matter under 28 U.S.C. §§ 1343, 2201 and 2202.

On October 27, 1972, the Court issued a temporary restraining order without notice preventing defendants and their agents from returning Burchett to the Prison pursuant to A.R.S. § 31–224, subsec. D until such time as his rights could be determined and an order to show cause why that restraining order should not be made permanent and preliminary and permanent injunctions issued as sought by the complaint. The

restraining order was continued in effect by agreement of the parties on November 1, 1972, pending the filing of appropriate motions by defendants, their determination, and further order of the Court.[2]

Defendants moved to dismiss the complaint on November 15, 1972 for the reasons that (1) the Court lacked jurisdiction of the subject matter because the complaint failed to raise a substantial federal question, (2) certain prior litigation between the parties in the Arizona state courts constituted a complete bar to the maintenance of this action, and (3) there was no constitutional right to a hearing in connection with Burchett's return from the Hospital to the Prison. Burchett responded to the motion to dismiss and also moved for partial summary judgment as to the issues of his constitutionally protected right to treatment and his statutory and constitutional

---

1. A.R.S. § 31–224 provides in relevant part as follows:

 "A. When a prisoner confined in the state prison discloses symptoms of mental illness, the prison physician shall examine him, and if he is determined to be so afflicted, the physician shall report the fact in writing to the superintendent of the prison, describing the condition found, together with any recommendations he has. Upon receipt of the report, the superintendent shall file a petition as provided in § 36–509 and thereafter the proceeding shall conform to article 1 of chapter 5, title 36.

 . . . .

 "C. If the prisoner is determined to be mentally ill, the court shall order and direct that he be confined in the Arizona state hospital in the legal custody of the superintendent of the prison. The transfer of the prisoner to the state hospital shall be made by the superintendent of the prison.

 "D. The superintendent of the state hospital shall render to the superintendent of the prison, a quarterly report of the condition of the prisoner, and when it appears that the prisoner has sufficiently recovered that he may be returned to the prison without further risk, he shall be returned to serve the unexpired term, and the period he was confined in the state hospital shall be counted as though served in prison. If the term of imprison-

 ment expires during the time the mentally ill prisoner is confined in the state hospital, the superintendent of the prison shall forward to the prisoner his legal discharge from prison. As amended Laws 1968, Ch. 144, § 1."

2. The parties agreed and the Court ordered at that time that (1) Burchett would be retained in the Maximum Security Ward at the Hospital and provided with care and treatment and all patient privileges on the same basis as any other patient in the ward; (2) he would be provided with visiting privileges on the same basis as any other patient in the Maximum Security Ward, except that visits by his attorneys would be scheduled a reasonable time in advance with the Director of the Maximum Security Ward; (3) he would be permitted access to reasonable examination and reexamination by his psychiatrists but such appointments would be scheduled at a reasonable time in advance with the Director of the Maximum Security Ward; (4) approval from the Administrator of the Hospital would be obtained prior to interviewing any Hospital staff personnel while they were on duty by Burchett's attorneys or other agents, and (5) in general Burchett would be cared for and dealt with on the same basis as any other patient in the Maximum Security Ward.

rights to notice and hearing in compliance with the requirements of due process and equal protection of the law before such treatment was terminated. All of these matters were fully briefed by the parties and argued orally to the court on January 10, 1973. No genuine issues of material fact were raised· by defendants in response to the Statement of Facts upon which Burchett relied in support of his motion.

Following the argument, the Court ordered that the motion to dismiss be denied, that the motion for partial summary judgment be granted, and that the restraining order previously entered be made a permanent injunction until such time as Burchett's right to treatment is terminated in accordance with the requirements of due process and equal protection of law. These rulings are hereby confirmed in this order.

This Court has previously stated in its findings of fact and conclusions of law in Burchett v. Eyman, No. CIV 71–401 PHX–CAM (July 21, 1972) (unreported), a habeas corpus proceeding also involving Burchett, that "a state having custody of a man's body has a duty to treat a treatable illness, whether that illness be physical or mental." There was uncontradicted psychiatric testimony at an October, 1972 commitment hearing before the Pinal County Superior Court that Burchett was mentally ill, that inpatient treatment at the Hospital would benefit him, and that no psychiatric treatment was available at the Prison.

█ Burchett has argued that the right to treatment is of constitutional dimension.[3] The Court need not, however, make that determination at this time. By enacting A.R.S. § 31–224 and by committing Burchett from the Prison to the Hospital pursuant to its terms,

the State of Arizona has both determined that he is in need of mental treatment and has undertaken the corresponding responsibility to provide it.

█ This Court has previously held in Vaughan v. Bower, 313 F.Supp. 37 (D.Ariz.), aff'd 400 U.S. 884, 91 S.Ct. 139, 27 L.Ed.2d 129 (1970), that the right to mental treatment at the Hospital is a fundamental public benefit in which a patient has a substantial individual interest. It thus falls within the categories of rights requiring a hearing before that benefit is terminated and the patient returned to the Prison or transferred elsewhere. See Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L. Ed.2d 287 (1970). See also Jones v. Robinson, 142 U.S.App.D.C. 221, 440 F. 2d 249 (1971); Covington v. Harris, 136 U.S.App.D.C. 35, 419 F.2d 617 (1969). The Court now holds therefore that defendants must comply with the requirements of due process and equal protection of the law before Burchett's right to treatment at the Hospital may be terminated and that Burchett's complaint states a proper claim for relief under the Civil Rights Act as to that issue.

The question then arises as to the procedures and the forum in which these rights are to be afforded. The precise question is to whom, by what means, and in what type of proceeding must it "appear that the prisoner has sufficiently recovered that he may be returned to the prison without further risk," under A. R.S. § 31–224, subsec. D before he can be returned. The statute itself is silent in these respects.

Burchett has argued that the earliest predecessor of A.R.S. § 31–224, subsec. D, Chapter LXXXVII of the Compiled Laws of the Territory of Arizona (1871), provided that the committing

3. The authorities cited are Rouse v. Cameron, 125 U.S.App.D.C. 366, 373 F. 2d 451 (1966); Covington v. Harris, 136 U.S.App.D.C. 35, 419 F.2d 617 (1969); Wyatt v. Stickney, 325 F.Supp. 781, 784, and 334 F.Supp. 1341 (M.D. Ala.1971); Vaughan v. Bower, 313 F. Supp. 37 (D.Ariz.), affirmed, 400 U.S. 884, 91 S.Ct. 139, 27 L.Ed.2d 129 (1970); McNeil v. Patuxent Institution Director, 407 U.S. 245, 92 S.Ct. 2083, 32 L.Ed. 2d 719 (1972); In re Curry, 452 F.2d 1360, 1363 n. 3 (D.C.Cir.1971); Application of D.D., 118 N.J.Super. 1, 285 A.2d 283, 286 (1971); Martarella v. Kelley, 349 F.Supp. 575 (S.D.N.Y.1972).

probate judge with the authority for involuntary commitment also had the corresponding power of release and that even though later statutes were silent as to this matter, the earlier provisions remained in effect. State v. Maik, 60 N.J. 203, 287 A.2d 715, 722 (1972). The Court is of the opinion, however, that it should not decide this issue at the present time but that defendants and other appropriate state officers should first be given the opportunity to determine the procedures to be utilized if and when they seek to return Burchett to the Prison.

It is possible that proper administrative proceedings coupled with effective judicial review might satisfy the due process and equal protection requirements involved. *Compare* Goldberg v. Kelly, *supra*. On the other hand, since the Pinal County Superior Court is the committing court because of the Prison's location, the State might determine that there would be greater efficiency and that unnecessary litigation would be eliminated if that court also heard contested applications to terminate treatment. The Court at the present time is unwilling to order the State to adopt either of these alternatives or to foreclose the possibility of some other solution. The Court through its permanent injunction, however, has retained jurisdiction to take appropriate action should defendants proceed in any manner that would be in violation of Burchett's constitutionally protected rights.

Two other matters should be discussed briefly:

■ (a) Defendants have argued that Burchett's complaint necessarily sought an injunction against the enforcement of a state statute by the state officers and that pursuant to 28 U.S.C. § 2281 et seq., a three-judge court is required before an injunction enjoining its enforcement could issue. As the Court views the matter, however, it is merely construing A.R.S. § 31–224 so as to be constitutional on its face and as so construed also to be constitutional as applied to Burchett. The permanent injunction issued in this proceeding is only against any future unconstitutional application of the statute to Burchett. A three-judge court is not required for this purpose. *E. g.*, Native American Church v. Arizona Corporation Commission, 405 U.S. 901, 92 S.Ct. 934, 30 L. Ed.2d 775 (1972) (dissent); Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Ex parte Bransford, 310 U.S. 354, 60 S.Ct. 947, 84 L.Ed. 1249 (1940); Hobbs v. Pollock, 280 U.S. 168, 50 S.Ct. 83, 74 L.Ed. 353 (1929).

(b) Defendants also contend that certain prior litigation between the parties in the Arizona state courts amounts to a complete bar or collateral estoppel as to the claims asserted in Burchett's present complaint. A review of the pleadings and orders in those matters, however, when compared to the issues involved in the present case, shows that Burchett suffers no such disability.[4]

4. Burchett was previously committed to the Hospital in March, 1971, and remained a patient there until December, 1971. At that time he was returned to the Prison without any prior written notice or any pretermination hearing. Burchett's counsel filed a special action complaint in the Maricopa County Superior Court seeking an order staying his return to the Prison and a review of the decision that he be returned. Before the order was served, Burchett was returned to the Prison and remained there throughout the time those proceedings were pending. The issues of a constitutional and statutory protected right to mental treatment and to due process and equal protection of the law before that right was terminated were raised in the complaint. The Superior Court held, however, only that since Burchett was then incarcerated in the Prison, the proper procedure for him to follow was to seek recommitment as outlined in Maxwell v. McBryde, 12 Ariz.App. 269, 469 P.2d 835 (1970), and dismissed the petition. The Arizona Court of Appeals and the Supreme Court of Arizona thereafter both declined to accept jurisdiction of successive special action petitions brought to review the decisions by the Hospital officials and the Superior Court.

Although the constitutional and statutory rights here involved were argued before the Arizona courts, it does not appear that they were actually decided by them. In addition, the state courts did not decide any issue of damages presented by an amended special action complaint filed in the Maricopa County Superior Court. Since Burchett had been returned to the Prison prior to the effective commencement of the special action proceedings, issues of his right to continue treatment in the Hospital and declaratory relief with respect to his present commitment were not involved. The present complaint involves facts and legal issues distinct from those alleged and decided in the prior state court proceedings.

■■ The Civil Rights Act was intended to override certain kinds of state laws, to provide a federal remedy where the state remedy, although adequate in theory, was not available in practice, and to provide a remedy in federal court supplementary to any the state might have. McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 10 L. Ed.2d 622 (1963). It creates a new cause of action in federal court. Beauregard v. Wingard, 230 F.Supp. 167, 173 (S.D.Cal.1964).

■■ Defendants rely primarily upon P. I. Enterprises, Inc. v. Cataldo, 457 F.2d 1012 (1st Cir. 1972), to sustain their *res judicata* argument. That decision, however, holds only that "the doctrine of collateral estoppel 'precludes relitigation of issues actually litigated *and determined* in the prior suit.'" 457 F.2d at 1015 (Emphasis added). Reasonable doubt as to what was decided by a prior judgment should be resolved against using it as an estoppel. Kauffman v. Moss, 420 F.2d 1270, 1274 (3d Cir. 1970). Prior state court proceedings concerning the same general subject matter cannot by themselves require dismissal of a Civil Rights Act case. Mulligan v. Schlacter, 389 F.2d 231 (6th Cir. 1968). Since the issues now involved were not and could not

have been either litigated or decided in the prior state court proceedings, principles of *res judicata* and collateral estoppel are inapplicable and the present case should therefore be permitted to proceed.

For all of the foregoing reasons set forth herein, therefore, it is ordered as follows:

(1) Defendants' motion to dismiss is hereby denied;

(2) Burchett's motion for partial summary judgment is granted as to the issues of his right to treatment in the Hospital and to a pretermination hearing complying with the requirements of due process and equal protection of law and with provision for effective judicial review before he is returned to the Prison; and

(3) The restraining order previously continued in effect by agreement of the parties and the Court's order of November 1, 1972, is hereby modified to become a permanent injunction and shall remain in effect according to its terms until such time as Burchett's right to treatment is terminated in accordance with the requirements of due process and equal protection of law.