Johnny J. E. MEADOWS,
Plaintiff-Appellant,

v.

Lon EVANS, Sheriff, Tarrant County,
Texas, Defendant-Appellee.

No. 74-3362.

United States Court of Appeals,
Fifth Circuit.

April 8, 1977.

Richard M. Lannen, Akin, Gump, Strauss, Hauer & Feld, Dallas, Tex. (Court-appointed not under the Act), for plaintiff-appellant.

Tim Curry, Crim. Dist. Atty., Howard M. Fender, Asst. Dist. Atty., Ft. Worth, Tex., John L. Hill, Atty. Gen., Austin, Tex., for plaintiff-appellant.

Before BROWN, Chief Judge, and TUTTLE, GEWIN, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, DYER, MORGAN, CLARK, RONEY, GEE, TJOFLAT and HILL, Circuit Judges.[*]

PER CURIAM:

This case was decided by a divided panel of this Court, the opinion being reported at 529 F.2d 385 (5th Cir. 1976). Petition for rehearing en banc was granted. *Meadows v. Evans*, 529 F.2d 387 (5th Cir. 1976). After additional briefing and oral argument, the en banc court has decided to adhere to the majority opinion of the panel, so that opinion now states the position of the en banc court on this case.

Accordingly, the en banc court reverses and remands this case to the district court *first*, for consideration of any damage claims made for asserted deprivations during confinement, which can be made without exhaustion, and *second*, for consideration of whether claims going to the involun-

tariness of the confession, which claims cannot proceed prior to exhaustion of state remedies, should be held in abeyance rather than dismissed in light of the statute of limitations problem inherent in dismissal.

GOLDBERG, Circuit Judge, with whom TUTTLE and GODBOLD, Circuit Judges, join, concurring in part and dissenting in part:

Judge Tjoflat has explained pointedly and persuasively why collateral estoppel provides the proper conceptual framework for dealing with the problem before the court and why the majority's approach is wholly misguided. I am pleased to join his thoughtful opinion with two brief reservations.

First, I would emphasize that the rigors that are conditions precedent to application of collateral estoppel generally must be scrupulously observed in this context of state prisoner § 1983 claims. Judgments resting on a plea of guilty raise the most serious concerns. Because very little is "litigated" at the acceptance of a guilty plea, the doctrine must here be most sparingly enforced. *See* 1B Moore's Federal Practice ¶ 0.418[1], pp. 2707–08 (1974). The appellant's claim, however, is directed at the voluntariness of the plea itself. Because the state judge was constitutionally obligated to determine on the record that the plea was in fact voluntary and because the record here demonstrates that appellant was interrogated and affirmed the voluntariness of the plea, giving the judgment collateral estoppel effect on the specific issue of the plea's voluntariness is not unwarranted. Absent either of these conditions, I see no justification for according collateral estoppel effect to a judgment resting on a guilty plea.

Second, I would note that previous cases applying the doctrine elaborated by Judge Tjoflat have justified enforcement of a collateral estoppel bar in part on the availability of the federal habeas forum for redeter-

mination of the prisoner's constitutional claim. *See Brazzell v. Adams*, 493 F.2d 489, 490 (5 Cir. 1974). Under the recent Supreme Court decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067, however, alleged violations of the fourth amendment may not be redetermined in federal habeas proceedings once fully and fairly litigated in the state courts. Application of the doctrine developed by Judge Tjoflat to such claims would accordingly preclude any federal forum from inquiring into a fourth amendment claim litigated in state criminal proceedings. I simply note that application of collateral estoppel to claims covered by *Stone* would raise an additional, troublesome question not involved in the case at bar.

AINSWORTH, Circuit Judge, concurring in part and dissenting in part:

I concur in the remand of this case for trial on the allegations of plaintiff's conditions of confinement in the Tarrant County Jail. However, I dissent from the en banc holding which reverses the district court and remands to permit exhaustion of state remedies.

As to the latter portion of plaintiff's suit, it is based upon allegations of coercion and bribery of an unnamed witness and seeks damages under 42 U.S.C. § 1983 against the Sheriff of Tarrant County, Texas, and "law enforcement agents who acted within the Tarrant County Jail." I agree with Judge Tjoflat's concurring and dissenting opinion in this regard and with the rationale there expressed that Meadows is collaterally estopped from litigating this issue since it has been decided adversely to him twice by the Texas Court of Criminal Appeals both on direct appeal of the conviction and on collateral habeas corpus. The question is, therefore, *res judicata* and Meadows is collaterally estopped from continuing to litigate it. There is no valid reason, therefore, to remand the case for further proceedings in this context when the issue has already been fully litigated and decided in the Texas courts.

Though I would remand the case for a hearing on the question of plaintiff's allegation as to conditions of confinement in the jail, I would otherwise affirm the district court.[1]

TJOFLAT, Circuit Judge, with whom TUTTLE, GOLDBERG and GODBOLD, Circuit Judges, join, concurring in part and dissenting in part:

The problem confronting the en banc court today is whether an inmate confined pursuant to a valid state court conviction entered on a plea of guilty may relitigate the voluntariness of that plea by maintaining a civil rights action for damages in federal court. The majority has chosen to solve the problem by engrafting onto 42 U.S.C. § 1983 (1970) the exhaustion requirement of 28 U.S.C. § 2254 (1970) and directing the inmate to launch a collateral attack on his conviction in state court first. In my opinion this novel solution is foreclosed by the plain language of the Supreme Court in *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), and *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Moreover, in reaching its disposition the majority has elected to ignore and, thus, appears to overrule *sub silentio* previous decisions of this court which clearly suggest a reasonable solution to the problem. The shortcomings of the approach the court now adopts are best understood after reviewing the procedural history disclosed by the record before us and examining the substance of the appellant's section 1983 allegations.

I

The record before the panel in this case was limited to the proceedings in the district court on appellant's section 1983 civil

---

1. Under the circumstances I do not reach the question of whether this section 1983 suit may be pursued before state remedies are exhausted. *See also* my dissenting opinion in *Covington v. Cole*, 5 Cir., 1976, 528 F.2d 1365, 1373.

*See also Smart v. Jones*, 5 Cir., 1976, 530 F.2d 64, and *Bruce v. Wade*, 5 Cir., 1976, 537 F.2d 850.

rights claim. That record consisted of the appellant's pro se complaint, the report of the magistrate and the order of the district court, which adopted the findings and conclusions of the magistrate. During oral argument on rehearing en banc this court directed that the record on appeal be supplemented with the records of appellant's state and federal habeas corpus proceedings.[1] Pursuant to these instructions an addendum to the record was filed.

The augmented record on appeal discloses that appellant was indicted for first degree murder in the 70th ˅Judicial District Court of Ector County, Texas, on February 29, 1972. On April 20, 1972, that indictment was transferred to Criminal District Court No. 3 of Tarrant County, Texas, where all subsequent Texas trial court proceedings involving appellant took place. On October 4, 1972, appellant pled guilty to first degree murder and received a life sentence. On September 25, 1973, the Texas Court of Criminal Appeals affirmed the conviction.[2]

Appellant then commenced in the United States District Court the civil rights suit now receiving en banc consideration. His pro se complaint, filed June 13, 1974, was not served on the defendants,[3] and no answer was filed. On June 21, 1974, the magistrate on his own initiative recommended dismissal of the complaint on the ground that it sought habeas corpus relief. (Appellant had not yet pursued state habeas remedies.) The district court on June 21, 1974, entered an order adopting the magistrate's findings and conclusions and dismissing the case without prejudice to appellant's right to seek habeas corpus relief. The appeal from that order was lodged in this court on July 5, 1974.

While this appeal was awaiting oral argument, appellant on September 26, 1974, commenced habeas corpus proceedings in Criminal Court No. 3 of Tarrant County, Texas. On January 27, 1975, that court entered a memorandum order recommending denial of the petition on the merits, and on February 19, 1975, the Texas Court of Criminal Appeals adopted that recommendation and denied the petition.[4]

On April 18, 1975, appellant filed a petition for writ of habeas corpus in the United States District Court. An answer to the petition was served on May 13, 1975. As far as can be determined from the augmented record before us, no further action occurred in that case prior to the argument of this appeal before the original panel on October 7, 1975, or the en banc court on September 9, 1976, and none has taken place since.

## II

Appellant's complaint in the district court presented a variety of civil rights claims. Some dealt with the conditions of his confinement in the Tarrant County jail, and as to those I fully agree that they should be remanded for trial as the panel and the en banc court have decreed. It is the disposition of appellant's claim that his guilty plea was coerced that in my opinion cannot be reconciled with Supreme Court precedent and the common sense approach found in our prior decisions.

Unfortunately, appellant's claim was not placed in its complete context until the record was supplemented following the en banc argument. Although the disposition fashioned by the panel and adopted today

---

1. The record of the state trial court proceedings, which culminated in appellant's first degree murder conviction and life sentence, was not requested.

2. *Meadows v. State*, 499 S.W.2d 156 (Tex.Crim. App.1973).

3. The sheriff of Tarrant County was the only named defendant, but appellant also sought to join certain unnamed persons who presumably were the sheriff's agents.

4. On March 26, 1975, appellant commenced another state habeas proceeding for the sole purpose of obtaining a copy of the transcript of the first degree murder prosecution against him in state court. The Texas Court of Criminal Appeals denied his petition on May 7, 1975, in an unreported opinion. These proceedings are clearly irrelevant to the issues now pending before the en banc court. They are mentioned simply to complete the chronology of events.

348

might seem responsive to the record as it was presented to the district court, it clearly does not respond to the augmented record now before us.

### A. The Record Before The District Court

In his complaint, appellant alleged that his guilty plea was involuntary because of the treatment he received in the Tarrant County jail during his pretrial detention. He recited that he was interrogated under torture until he confessed to the murder and pled guilty.[5]  The complaint made it clear that appellant was not seeking release from custody; rather, he sought a declaration that his constitutional rights were violated and resulting damages.[6]  The allegations for relief were sufficiently broad to encompass the allegedly unconstitutional guilty plea.  It appeared from the complaint that appellant was serving the sentence imposed pursuant to his conviction. Nothing in the allegations indicated that the conviction had been set aside.  In truth, the conviction had been affirmed on appeal in a reported decision,[7] though that fact was not made known to the district court.

That decision expressly held that appellant's guilty plea was valid.  Thus, appellant's procedural posture in the district court was that of a convicted felon seeking damages for an allegedly invalid guilty plea which remained undisturbed and which the law treated as valid and binding.

### B. The Record Before The En Banc Court

We now have the benefit of the augmented record, including the memorandum order of the Tarrant County Court that recites the reasons why appellant's state habeas corpus petition was denied.  The order indicates that before appellant's guilty plea was accepted he was sworn as a witness and, after being advised of his right to remain silent, identified his written confession, stated that it was voluntary and confessed his guilt.[8]  The trial court found the confession and plea to be voluntary[9] and recommended the denial of the habeas petition by the Texas Court of Criminal Appeals.  As has been pointed out *supra*, the recommendation was adopted and the petition was denied.  Thus, the very issue the majority would have appellant litigate in state court

---

**5.** I think it clear under *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), that an action for damages may be maintained against the defendants for improper custodial treatment as distinguished from a declaration that the plea was constitutionally defective.

**6.** Appellant also sought an injunction prohibiting the defendants from further unconstitutional treatment of him while he was in custody; however, he did not seek any injunctive relief from the allegedly unconstitutional plea and consequent conviction and confinement, and, indeed, under *Preiser* he could not have.

**7.** *See* note 2 *supra.*

**8.** The order indicates that the appellant was cross-examined by his court-appointed attorney concerning the voluntariness of his plea.

**9.** The findings and conclusions of the trial court include the following:

FINDINGS OF FACT

1.  Petitioner voluntarily plead [*sic*] guilty to the offense of murder after numerous consultations with his counsel.

2.  Petitioner freely and voluntarily confessed in open court that he committed the offense at the time and in the manner alleged.

3.  No plea bargaining agreement was called to the attention of the Court beyond the recommendation made in open court with all parties present that the punishment be fixed at life.

\*    \*    \*    \*    \*    \*

CONCLUSIONS OF LAW

\*    \*    \*    \*    \*    \*

2.  Petitioner has waived all non-jurisdictional rights arising prior to his plea of guilty.

3.  Petitioner was not denied any constitutional rights at or after his trial.

4.  Since one confession introduced at Petitioner's trial was his personal judicial confession and the other confession was admitted when Petitioner stated under oath that he had voluntarily given such statement and signed it, the conviction is not infirm as being based upon a coerced confession.

5.  Since Petitioner testified under oath that he was pleading guilty freely and voluntarily despite contrary cautioning by counsel, he has not been unconstitutionally convicted by reason of coercion.

under the exhaustion doctrine has been explicitly decided by the Texas Court of Criminal Appeals not only once but twice, on direct appeal and on collateral attack.

### III

It is unclear to me from a reading of the majority opinions in this case and *Fulford v. Klein*,[10] its companion, whether the district court lacks jurisdiction to entertain a claim which draws in issue a matter necessarily litigated in a yet undisturbed state court criminal proceeding or whether the district court possesses jurisdiction but cannot exercise it unless and until the state remedies paralleling the habeas statute[11] have been exhausted. The suggestion that the district court, when faced with a claim about to be barred by the statute of limitations, ought to consider holding the civil rights claim in abeyance[12] implies that an inmate may invoke the district court's subject matter jurisdiction without exhausting his state remedies. Whichever construction is given these majority opinions, however, the result is the same: the inmate is precluded from prosecuting a section 1983 damages claim without first commencing and concluding state court litigation. This result was expressly rejected by the Supreme Court in *Preiser*. It unambiguously explained,

> [T]he respondents here sought no damages, but only equitable relief—restoration of their good-time credits—and our holding today is limited to that situation. If a state prisoner is seeking damages, he is attacking something other than the fact or length of his confinement, and he is seeking something other than immediate or more speedy release—the traditional purpose of habeas corpus. In the case of a damages claim, habeas corpus is *not* an appropriate or available federal remedy. Accordingly, as [the State itself] concede[s], a *damages action by a state prisoner could be brought under the Civil Rights Act in federal court without any requirement of prior exhaustion of state remedies.* 411 U.S. at 494, 93 S.Ct. at 1838. (emphasis added in part) (cite omitted).

The Court reiterated this stand in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and, thus, the notion that the exhaustion doctrine applies in section 1983 prisoner damage suits ought to have been laid to rest.

### IV

In *Wolff* the Supreme Court hinted at the result that might obtain when a party seeks to litigate in a section 1983 proceeding an issue previously resolved in state court. The Court observed, "[o]ne would anticipate that normal principles of *res judicata* would apply" where (as in *Wolff*) an issue may be subject to simultaneous litigation in a section 1983 case and state habeas proceedings.[13] It would seem logically to follow that res judicata principles would apply where the issue presented in the section 1983 context has already received dispositive treatment in state criminal proceedings.

The Court has long recognized that res judicata principles may operate to estop one convicted in a criminal proceeding from relitigating in a subsequent civil case "questions 'distinctly put in issue and directly determined' in the criminal prosecution." *Emich Motors v. General Motors*, 340 U.S. 558, 569, 71 S.Ct. 408, 414, 95 L.Ed. 534 (1951). *See also Ashe v. Swenson*, 397 U.S. 436, 443, 90 S.Ct. 1187, 25 L.Ed.2d 469 (1970). While for some time the concept of mutuality limited the estoppel effect to situations where the parties to the subsequent suit were identical to, or in privity with, those in the prior criminal proceeding,[14] in recent years this restriction has gradually

---

**10.** 529 F.2d 377 (5th Cir. 1976), *aff'd on basis of panel opinion,* 550 F.2d 345 (5th Cir. 1977) (en banc).

**11.** 28 U.S.C. § 2254 (1970).

**12.** 529 F.2d at 386.

**13.** 418 U.S. at 554 n. 12, 94 S.Ct. at 2974.

**14.** *See* 1B J. Moore, Federal Practice ¶ 0.418 (2d ed. 1974).

given way,[15] and now it is generally accepted that a criminal conviction may be used by a party to a subsequent civil proceeding to estop the former defendant from relitigating issues which were necessarily resolved against him in the prior criminal case.[16]

There are some who would argue that, despite this general rule, a state criminal conviction should not be given collateral estoppel effect in a subsequent section 1983 action—or not at least where the application of the rule would foreclose consideration of the plaintiff's constitutional claim.[17]

Most courts have not hesitated, however, to apply collateral estoppel in section 1983 actions regardless of whether the prior proceeding was civil [18] or criminal. [19]

In this circuit, for example, in *Shank v. Spruill*, 406 F.2d 756 (5th Cir. 1969), and *Jones v. Bales*, 58 F.R.D. 453 (N.D.Ga.1972), *aff'd on basis of district court opinion*, 480 F.2d 805 (5th Cir. 1973), we held that a section 1983 action which is based on an allegedly unlawful arrest or search must be dismissed if the legality of the arrest or search was previously litigated in the context of a criminal proceeding.[20]   While we·

**15.** *See, e. g., Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971); *Cheramie v. Tucker*, 493 F.2d 586 (5th Cir. 1974), *cert. denied*, 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974); *Ritchie v. Landau*, 475 F.2d 151, 155 (2d Cir. 1973); *Rachal v. Hill*, 435 F.2d 59, 61–63 (5th Cir. 1970), *cert. denied*, 403 U.S. 904, 91 S.Ct. 2203, 29 L.Ed.2d 680 (1971); *Zdanok v. Glidden Co.*, 327 F.2d 944, 954–956 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964); *United States v. United Air Lines, Inc.*, 216 F.Supp. 709 (D.Nev. 1962), *aff'd sub nom. United Air Lines, Inc. v. Wiener*, 335 F.2d 379, 404–405 (9th Cir.) (adopting district court opinion as to collateral estoppel), *cert. denied*, 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964); *Bruszewski v. United States*, 181 F.2d 419 (3d Cir.), *cert. denied*, 340 U.S. 865, 71 S.Ct. 87, 95 L.Ed. 632 (1950); *Bernhard v. Bank of America*, 19 Cal.2d 807, 811–813, 122 P.2d 892, 894–895 (1942) (Traynor, J.).

**16.** *See, e. g., Breeland v. Security Insurance Co. of New Haven*, 421 F.2d 918, 921–923 (5th Cir. 1969); *Cardillo v. Zyla*, 486 F.2d 473, 475–476 (1st Cir. 1973).

**17.** *Preiser v. Rodriguez*, 411 U.S. 475, 509 n. 14, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973) (Brennan, J., dissenting); *Ney v. California*, 439 F.2d 1285, 1288 (9th Cir. 1971); *Wecht v. Marsteller*, 363 F.Supp. 1183, 1190 (W.D.Pa. 1973); *Ames v. Vavreck*, 356 F.Supp. 931, 940–941 (D.Minn.1973); *Moran v. Mitchell*, 354 F.Supp. 86 (E.D.Va.1973).

**18.** *See, Garner v. Louisiana State Bd. of Educ.*, 489 F.2d 91 (5th Cir.), *cert. denied*, 419 U.S. 830, 95 S.Ct. 53, 42 L.Ed.2d 55 (1974); *Parker v. McKeithen*, 488 F.2d 553 (5th Cir.), *cert. denied*, 419 U.S. 838, 95 S.Ct. 67, 42 L.Ed.2d 65 (1974); *Bricker v. Crane*, 468 F.2d 1228, 1231 (1st Cir. 1972), *cert. denied*, 410 U.S. 930, 93 S.Ct. 1368, 35 L.Ed.2d 592 (1973); *P. I. Enterprises v. Cataldo*, 457 F.2d 1012, 1014 (1st Cir. 1972); *Lackawanna Police Benevolent Ass'n v.*

*Balen*, 446 F.2d 52 (2d Cir. 1971); *Taylor v. New York City Transit Auth.*, 433 F.2d 665 (2d Cir. 1970); *Coogan v. Cincinnati Bar Ass'n.*, 431 F.2d 1209 (6th Cir. 1970); *Scott v. California Supreme Court*, 426 F.2d 300 (9th Cir. 1970); *Frazier v. East Baton Rouge Parish School Bd.*, 363 F.2d 861 (5th Cir. 1966); *Jenson v. Olson*, 353 F.2d 825 (8th Cir. 1965); *Lavasek v. White*, 339 F.2d 861 (10th Cir. 1965); *Chance·v. County Bd. of School Trustees*, 332 F.2d 971 (7th Cir. 1964).

**19.** *See Mastracchio v. Ricci*, 498 F.2d 1257 (1st Cir. 1974) *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975); *Thistlethwaite v. City of New York*, 497 F.2d 339 (2d Cir.), *cert. denied*, 419 U.S. 1093, 95 S.Ct. 686, 42 L.Ed.2d 686 (1974); *Rosenberg v. Martin*, 478 F.2d 520 (2d Cir.), *cert. denied*, 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973); *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 478 F.2d 938 (1973); *Williams v. Liberty*, 461 F.2d 325 (7th Cir. 1972); *Metros v. United States District Court*, 441 F.2d 313, 316 (10th Cir. 1971); *Kauffman v. Moss*, 420 F.2d 1270 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *Mulligan v. Schlachter*, 389 F.2d 231 (6th Cir. 1968); *Goss v. Illinois*, 312 F.2d 257 (7th Cir. 1963); *Burchett v. Bower*, 355 F.Supp. 1278 (D.Ariz.1973); *Moran v. Mitchell*, 354 F.Supp. 86 (E.D.Va.1973); *Palma v. Powers*, 295 F.Supp. 924, 937 (N.D.Ill.1969).

**20.** The *Shank* opinion is quite cryptic and merely indicates that, as long as the plaintiff's conviction stands, the arrest underlying that conviction "must be viewed as proper." 406 F.2d at 757. This analysis leaves uncertain the question of whether the legality of the arrest was litigated in the prior criminal proceeding. Ordinarily the legality of an arrest is only at issue in a criminal case if the defense attempts to suppress the fruits of a search incident to that arrest. This distinction was highlighted in *Jones v. Bales* where there were two searches. Applying *Shank*, the court found that the plain-

did not specifically use the term "collateral estoppel" in either of these cases, both opinions have subsequently been cited as authority for the notion that a criminal judgment may have collateral estoppel effect in a subsequent civil suit raising a fourth amendment claim.[21] Neither *Shank* nor *Jones* relied on the novel notions of exhaustion advanced by the court today; nor did our subsequent decision in *Brazzell v. Adams*, 493 F.2d 489 (5th Cir. 1974). The plaintiff there was a state prisoner who was incarcerated on a sentence imposed after he had pled guilty to selling heroin. The thrust of the complaint was that the prosecutor and state agents who participated in plaintiff's arrest had entrapped him, for he had participated in the transaction in the belief that he was assisting the agents' investigation of his supplier. We held that the plaintiff's guilty plea necessarily amounted to an admission of all facts necessary to establish his guilt, and, thus, the judgment based on that plea estopped him from now arguing that he did not have the requisite criminal intent at the time of the sale.

We have also applied collateral estoppel in the context of a *Bivens*-type action[22] against F.B.I. agents who had allegedly coerced plaintiff into confessing to a robbery, for which he was then tried and convicted. *Willard v. United States*, 422 F.2d 810 (5th Cir. 1970). Prior to commencing the civil suit, the plaintiff had filed a new trial motion attacking the voluntary nature of the confession, but the motion was denied after a full evidentiary hearing. In the civil suit the disposition of the new trial motion was held to estop the plaintiff from relitigating the coercion issue. The court said:

> Although we need not put it categorically in such terms, the factual background from the prior proceeding gained added significance through notions akin to *collateral estoppel.* The issues were in practical effect identical. Once determined between essentially the same parties, reexamination is not permitted. Of course, it is beyond question that a prior criminal proceeding can have a *collateral estoppel effect in the subsequent civil action. . . .* This general rule is not changed by the fact that the action is brought by the person convicted in the prior criminal action instead of the usual case where the government brings civil action to recover damages subsequent to a criminal conviction. *Id.* at 811–812 (emphasis added) (citations omitted).

The only possible exception to the approach we have taken in these cases is found in *Alexander v. Emerson*, 489 F.2d 285 (5th Cir. 1973), which affirmed the dismissal of a section 1983 damages action by a prisoner who had not exhausted state remedies. The court observed, "[I]t would be improvident for a federal court to entertain a suit for damages inquiring into possible constitutional violations committed during the trial, while the petitioner is imprisoned on that conviction."[23] This was simply an acknowledgement of the fundamental policy consideration which undergirds the doctrines of res judicata and collateral estoppel: the law does not countenance the relitigation of an issue by a party who has already had his day in court. That policy consideration alone was sufficient to justify dismissal of the prisoner's claim. That re-

---

tiff was estopped as to one of the searches, which had been fully litigated in the prior criminal proceeding, but held that the plaintiff was not estopped as to the second search, which had "no bearing on the validity of plaintiff's convictions." 58 F.R.D. at 460. *See also Covington v. Cole*, 528 F.2d 1365, 1371 n. 10 (5th Cir. 1976); *Jackson v. Official Rep. & Emp. of Los Angeles Police Dept.*, 487 F.2d 885, 886 (9th Cir. 1973).

**21.** *See, e. g., Covington v. Cole*, 528 F.2d 1365, 1371 n. 10 (5th Cir. 1976); *Mastracchio v.*

*Ricci*, 498 F.2d 1257 (1st Cir. 1974), *cert. denied*, 420 U.S. 909, 95 S.Ct. 828, 42 L.Ed.2d 838 (1975); *Brazzell v. Adams*, 493 F.2d 489, 490 (5th Cir. 1974).

**22.** *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

**23.** 489 F.2d at 286, *quoting Smith v. Logan*, 311 F.Supp. 898, 899 (W.D.Va.1970).

course to state court habeas proceedings was still available did not affect the efficacy of that policy at all and was, in my opinion, irrelevant to the disposition. The important point was that the prisoner was estopped from relitigating an issue previously settled in state court.[24]

In sum, this circuit (as well as others) has not heretofore read the exhaustion requirement of 42 U.S.C. § 2254(b) (1970) into a section 1983 damages action where the principal issue involves the legality of the plaintiff's prior state criminal conviction. On the contrary, we have permitted such suits to go forward until it has become apparent that the prior criminal judgment estops the plaintiff in the civil suit.[25] In most instances the existence of the prior judgment and the issues it resolved, expressly or by opera-

tion of law, would be shown by defendant's answer to the prisoner complaint; or it might be that the estoppel issue does not fully surface until later in the pretrial proceedings. When the issue is developed will likely vary from one district court to another, depending upon the local procedures devised for the handling of section 1983 pro se prisoner complaints. Still another possibility is that the complaint itself will indicate the applicability of collateral estoppel. In my judgment this is such a case.

## V

A party can only be foreclosed on an issue in a collateral proceeding if that issue was necessarily determined in a prior proceeding.[26] Here the appellant's complaint states that he pled guilty at his Tarrant County

**24.** It could be countered that the *Alexander* panel made no mention of our prior decisions in *Shank v. Spruill* and *Jones v. Bales*, and that there was no explicit reference to the doctrine of collateral estoppel. But even if *Alexander* established by implication an exhaustion requirement for these cases, that approach has been rejected by the Supreme Court's *Preiser* decision. We recognized this when we next faced the issue in *Brazzell*, where we noted that "[t]he district court dismissed on the ground that appellant's remedy was by way of habeas corpus. *Cf. Alexander v. Emerson*, 5 Cir., 1973, 489 F.2d 285. *But see Preiser v. Rodriguez*, 1973, 411 U.S. 475, 494, 93 S.Ct. 1827, 1838, 36 L.Ed.2d 439, 453, with respect to prisoner actions for damages only." 493 F.2d at 489 n. 1. We then affirmed the district court by applying the doctrine of collateral estoppel.

**25.** At the same time we granted rehearing en banc in *Meadows* and *Fulford* we voted against rehearing en banc *Covington v. Cole*, 528 F.2d 1365 (5th Cir. 1976). *See* 533 F.2d 1135 (5th Cir. 1976). While the allegations of the complaint in *Covington* were ambiguous, the plaintiff in that case may well have been basing his section 1983 claim on a search which in a prior criminal case was determined to have been lawful. Referring to this possibility, the *Covington* court said,

We allude to the doctrine whereby an arrest is to be viewed as proper as long as a conviction flowing from that arrest stands. *See Shank v. Spruill*, 5 Cir. 1969, 406 F.2d 756, 757. The doctrine is in the nature of collateral estoppel, and would apply to any alleged deprivation of right which might be challenged in a direct appeal from a conviction or through a *habeas corpus* attack on the conviction. Our inability to apply this doctrine

in this appeal is simply explained—nothing in the meager record before us informs us of the charge or charges upon which Covington was convicted. *Id.* at 1370–1371 (footnotes omitted) (emphasis in original).

Thus, the court plainly indicated that, if the issue framed by a section 1983 claim has been litigated in a prior criminal proceeding, the proper approach is to entertain the action and apply the doctrine of collateral estoppel. It is not to dismiss for failure to exhaust state remedies.

It should be noted that a judgment dismissing the section 1983 claim on grounds of collateral estoppel would not bar the plaintiff from reviving his civil rights claim in the event the previous resolution of the issue is overturned, *e. g.*, by direct appeal or collateral post-conviction proceedings, including habeas corpus. The claim could be revived *at any time* pursuant to Fed.R.Civ.P. 60(b), which provides in part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: . . (5) . . . a prior judgment upon which it is based has been reversed or otherwise vacated . . . . The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. (Emphasis added.)

**26.** *See, e. g., Jones v. Bales*, 58 F.R.D. 453, 460 (N.D.Ga.1972), *aff'd*, 480 F.2d 805 (5th Cir. 1973); *Williams v. Liberty*, 461 F.2d 325, 327 (7th Cir. 1972); *Kauffman v. Moss*, 420 F.2d 1270, 1274 (3d Cir.), *cert. denied*, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970).

trial and a judgment of conviction was entered on that plea. Texas law requires that a trial judge determine that a plea is voluntary before accepting it. Tex.Code Crim. Proc.Ann. art. 26.13 (Vernon).[27] *See Coleman v. State,* 35 Tex.Cr. 404, 33 S.W. 1083 (1896); *Ex parte Chavez,* 482 S.W.2d 175 (Tex.Cr.App.1972). Thus the judgment of conviction not only reflects a judicial determination that the appellant was guilty of the substantive offense,[28] but indicates a judicial determination that appellant's plea was voluntary. Until such time as the Tarrant County criminal conviction is vacated, the appellant is precluded in this section 1983 proceeding from maintaining that the plea was involuntary.

In *Brazzell* we utilized the same reasoning. There we said that a plea of guilty necessarily implied the admission of the elements of the charged crime and that the plaintiff was bound by this presumed admission so long as the conviction stood. If *Brazzell* still has vitality, we should hold in a case such as this that the plaintiff is bound by a presumptively valid guilty plea.

### VI

In summary, we have a case in which the record before the district court requires dismissal of the guilty plea claim on estoppel grounds. If it can be said that that record leaves room for doubt as to whether the estoppel issue was fully developed in the district court, we cannot ignore the aug-mented record which demonstrates the resolution of the guilty plea issue against the appellant on both direct appeal and collateral attack in state court. To me the proper analysis is plain, and I cannot subscribe to the majority opinion, which chooses to ignore this approach and substitute an artificial solution to this recurring problem.[29]

---

27. At the time of appellant's trial, article 26.13 provided the following:

   If the defendant pleads guilty, or enters a plea of nolo contendere he shall be admonished by the court of the consequences; and neither of such pleas shall be received unless it plainly appears that he is sane, and is uninfluenced by any consideration of fear, or by any persuasion, or delusive hope of pardon, prompting him to confess his guilt.

28. *See Brazzell v. Adams,* 493 F.2d 489 (5th Cir. 1974).

29. I have one final observation which underscores the futility of the majority's analysis of this case. It seems to me that the majority opinion, requiring as it does an exhaustion of state remedies, implicitly recognizes that the principles of collateral estoppel apply in the context of a section 1983 damages claim. As I view it, the majority would not adopt an exhaustion requirement if exhaustion would in no way contribute toward a final resolution of the section 1983 claim. Any policy considerations which dictate holding a federal claim in abeyance pending a resolution of that claim in another forum must at the same time dictate that the other forum's resolution will in some way bear upon the outcome of the case in the federal court. A rule to the contrary would make the majority's exhaustion requirement, for all practical purposes, meaningless. Thus I view the majority opinion as a tacit agreement that collateral estoppel can be validly applied to section 1983 cases. If not, there is no utility whatever in delaying the prosecution of the section 1983 claim while state remedies are pursued.